**Hilda ALLEN, Plaintiff,**

v.

**SCHWAB REHABILITATION HOSPITAL, Defendant.**

**No. 80 C 4022.**

United States District Court,
N. D. Illinois, E. D.

Feb. 25, 1981.

Loretta C. Douglas, Chicago, Ill., for plaintiff.

Paul Jordan Cherner, Janet E. Goldberg, Friedman & Koven, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On July 31, 1980 Hilda Allen ("Allen") filed this action under 42 U.S.C. § 1981 ("Section 1981") against her employer, Schwab Rehabilitation Hospital ("Schwab"), alleging that Schwab had engaged in various acts of discrimination against Allen because she is black. On November 13, 1980 Allen moved for leave to amend her complaint to include a second count charging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, 2000e–2(a) ("Title VII"). Schwab objects to the proposed amendment, claiming that Allen's Notice of Right to Sue ("right to sue letter"), receipt of which is a jurisdictional prerequisite to maintaining a Title VII action in the District Court, was invalidly issued by the Equal Employment Opportunity Commission ("EEOC"). For the reasons stated in this memorandum opinion and order, Allen's motion to amend her complaint is granted.

### Facts

On March 6, 1980 Allen first filed some of her charges of unlawful discrimination with the Illinois Fair Employment Practices Commission ("FEPC") (since renamed the Human Rights Commission). Specifically Allen claimed that (1) two days earlier she had learned that Schwab would not promote her to become its Director of Employee Relations (she was then Acting Director) and (2) such failure to promote her was because she was black.

Pursuant to its work sharing agreement with EEOC and because Allen had specifically requested such action when she filed her Charge of Discrimination,[1] FEPC forwarded Allen's charge to EEOC for registration as a claim March 18, 1980. On May 7, 1980 a fact finding conference was conducted before an FEPC officer, and the complaint was taken under advisement for a determination on the merits.[2]

Sometime in September 1980 Allen apparently requested issuance by EEOC of a right to sue letter. EEOC did so September 26, 1980. Allen then filed the present motion, seeking to have her Title VII claims joined with the previously filed Section 1981 charges.

### Some Arcane Mysteries of Title VII Law

1. *Filing Date of Allen's Charges with EEOC*

It is axiomatic that a Title VII plaintiff must satisfy two requirements to maintain a federal court action: timely filing of employment discrimination charges with EEOC and receipt of a right to sue letter. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Schwab argues that Allen failed to satisfy those requirements in two respects:

1. Under 42 U.S.C. § 2000e–5(e) ("Section 5(e)"), Schwab asserts that no aggrieved person who has instituted proceedings in a state or local agency may file a charge with EEOC until "three hundred days after the alleged unlawful employment practice occurred, or ... thirty days after receiving notice that the State or local agency has terminated the proceedings under State or local law, whichever is earlier...." Here the allegedly unlawful practice—the decision to hire someone other than Allen as Director of Employee Relations—took place only 14 days before charges were filed with EEOC (by FEPC on Allen's behalf), and state proceedings had not terminated on that date. Thus Schwab argues that Al-

---

1. At the bottom of the FEPC Charge of Discrimination form (EEOC Form 5C Mar. 79), the complainant may check a box indicating that the complainant wants his or her charge filed with EEOC as well as FEPC. Allen checked that box.

2. FEPC (under present terminology, the Director of the Department of Human Rights) dismissed Allen's charge November 14, 1980.

len's filing of EEOC charges failed to satisfy either of the alternative requirements of Section 5(e).

■ 2. Under 42 U.S.C. § 2000e–5(c) ("Section 5(c)"), where a charge of discrimination cognizable under Title VII may also be brought under state law in a state agency it cannot be filed with EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated..." Schwab contends that Allen's filing with EEOC was ineffective because it took place only 12 days after institution of the state proceedings.

Schwab's first contention simply reads the statute backwards. Plain English tells us that the two time periods listed in Section 5(e) are those within which a charge *must* be filed with EEOC rather than periods in which such filing is precluded.[3]

■ Schwab's second contention poses more difficulties. Section 5(c) states:

In the case of an alleged unlawful employment practice occurring in a State ... authorizing a State or local authority to grant or seek relief from such practice ... no charge may be filed [with EEOC] ... before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated....

It is uncontroverted that Allen's filing of an EEOC charge on March 18, 1980 did not literally comport with Section 5(c), because the state proceeding had been instituted only 12 days earlier and was still ongoing. However, Allen argues that upon expiration of the 60-day period that began March 6, 1980 (with the state filing) EEOC assumed concurrent jurisdiction with FEPC over her complaint. In other words, Allen urges that if a charge is in fact lodged with EEOC before expiration of the Section 5(c) period, it is automatically *deemed* "filed" upon such expiration.

Allen relies on *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). There the plaintiff filed discrimination charges with EEOC, which referred those charges to the state agency. After the state agency terminated its own proceedings and EEOC conducted an investigation, EEOC filed charges on plaintiff's behalf in the District Court. Defendant argued that charges had never been filed with EEOC because plaintiff's filing did not comply with Section 5(c). But the Supreme Court disagreed (404 U.S. at 526, 92 S.Ct. at 618–19):

[W]e cannot agree with the respondent's claim that the EEOC may not properly hold a complaint in "suspended animation," automatically filing it upon termination of the state proceedings.... To require a second "filing" by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality.

Schwab suggests that *Love* is inapplicable because the plaintiff there filed his charge with EEOC in the first instance, while Allen first filed with a state agency. This Court discerns nothing either in *Love* or in any other authority stating or implying such a restriction. However a somewhat stronger argument can be made that *Love* is not directly applicable because the express language of that decision approves the concept of suspended animation only when the state proceeding has terminated and not, as Allen seeks to use it here, when the Section 5(c) 60-day period has expired.

No Supreme Court opinion has dealt with that issue directly. Nonetheless, in *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Court did apply the concept of suspended animation where the Section 5(c) period had expired by the running of the 60-day period rather than by termination of a state proceeding. Plaintiff in *Mohasco* was discharged August 29, 1975 and filed a complaint with EEOC June 15, 1976, 291 days later. EEOC re-

---

**3.** Schwab has apparently retreated in silence from its misconstruction of Section 5(e), as urged in its initial brief. Its reply brief made no mention of this argument in response to Allen's correct reading of Section 5(e) advanced in her brief.

ferred the charge to a state agency on the same day, and the agency dismissed the charge February 9, 1977. On August 24, 1977 plaintiff received EEOC's right to sue letter, stating that it had determined that "there is not reasonable cause to believe the charge is true" and that he was entitled to file a private action in federal district court within 90 days.

Directly at issue in *Mohasco* was whether plaintiff's filing of charges with EEOC satisfied the Section 5(e) requirement that such filing take place within 300 days of the alleged discrimination, and the Court held that it did not. But in calculating when the charge had effectively been filed with EEOC, the Court rejected the contention that it had never been filed (because the June 15, 1976 filing failed to satisfy the requirement of Section 5(c)) or that it had been filed at the time the state agency terminated its proceedings (under the principle of suspended animation). Instead, citing *Love*, the Court concluded that "filing" took place 351 days after the date of the alleged discrimination: 291 days between the "discrimination date" and plaintiff's attempted EEOC filing (and EEOC's filing on her behalf with the state agency) *plus the 60-day Section 5(c) period* (100 S.Ct. at 2492). It termed that a "rather straightforward reading of the statute" (*id.*).

This Court views the principle applied in *Mohasco* as controlling in this case. "Suspended animation" extends to instances in which, as here, the Section 5(c) 60-day period has expired while the charge has remained lodged with EEOC. Allen's charge must therefore be deemed to have been filed with EEOC May 5, 1980, 60 days after she first filed charges with FEPC.[4]

2. *EEOC's Issuance of a Right To Sue Letter*

■ Section 5(f)(1), 42 U.S.C. § 2000e–5(f)(1), states:

If a charge filed with the [EEOC] . . . is dismissed, or if within one hundred and

eighty days from the filing of such charge . . . [EEOC] has not filed a civil action . . . the [EEOC] . . . shall so notify the person aggrieved and within ninety days . . . a civil action may be brought . . . by the person claiming to be aggrieved. . . .

Allen's charge was effectively filed with EEOC May 5, 1980. EEOC's right to sue letter issued September 26, 1980 (144 days later), before dismissal of Allen's charge. Such issuance was premature, occurring as it did 36 days before expiration of the Section 5(f) 180-day period.

Courts are in disagreement over the effect of premature issuance of a right to sue letter. Both the Ninth and Second Circuits have held that such premature issuance does not preclude a complainant from filing suit in the District Court. *Bryant v. California Brewers Ass'n*, 585 F.2d 421, 425 (9th Cir. 1978), *vacated on other grounds*, 444 U.S. 158, 100 S.Ct. 1672, 64 L.Ed.2d 253 (1980); *Weise v. Syracuse University*, 522 F.2d 397, 412 (2d Cir. 1975). To the same effect, EEOC has adopted a regulation (29 CFR § 1601.28(a)(2), the "Regulation") permitting issuance of a right to sue letter before expiration of the 180-day period, "[p]rovided, that the District Director . . . has determined that it is probable that [EEOC] will be unable to complete its administrative processing of the charge" within the 180-day period.

Some other Courts have concluded that an improperly issued right to sue letter precludes the District Court from assuming jurisdiction over a Title VII claim. *See, e. g., Hiduchenko v. Minneapolis Medical and Diagnostic Center*, 467 F.Supp. 103, 107 (D.Minn.1979); *Grimes v. Pitney Bowes, Inc.*, 480 F.Supp. 1381, 1383–86 (N.D.Ga. 1979) (holding that the Regulation conflicts with Section 5(f)). *See generally*, Schlei and Grossman, *Employment Discrimination Law* 916 (1976).

No decision by the Seventh Circuit has addressed the issue, and it is unnecessary for this Court to choose between the two

4. Such "filing" with EEOC occurred 62 days after the alleged acts of discrimination. Thus Rule 5(e), which requires that charges actiona-

ble in state administrative proceedings be filed with EEOC within 300 days of the occurrence of the alleged discrimination, was also satisfied.

lines of authority to decide the present motion. By issuing the right to sue letter to Allen, EEOC violated the Regulation, which authorizes a pre-180-day issuance *only* upon the District Director's determination of probable inability to process the charge within the 180 day period. Allen's right to sue letter was issued on the erroneous basis that "[m]ore than 180 days have expired since the filing of this charge." EEOC having failed to comply with its own Regulation, the right to sue letter must be viewed as invalid *at the time it was issued.*

Now the remaining 36 days of the 180 day period have expired. This Court will not require Allen to engage in the pointless formality of obtaining a second right to sue letter. Under Section 5(f) it is clear that Allen is entitled to a right to sue letter without delay: EEOC's letter *must* be issued when the period of "one hundred and eighty days from the filing of such charge" has expired. Nothing in the statute or case law suggests that period can be tolled, and such tolling would be especially inappropriate where an EEOC mistake (prematurely issuing the right to sue letter) was the cause of the problem. Accordingly, Allen's right to sue letter will be considered to have been effectively issued on November 1, 1980 (another type of "suspended animation"), 180 days after Allen is deemed to have filed her charges with EEOC.

### 3. *EEOC's Failure to Attempt Conciliation*

■ Schwab next contends that EEOC took no action on Allen's complaint other than issuing the right to sue letter. It reasons from that contention that Title VII's fundamental policy that *substantive* consideration of a discrimination claim is deferred to EEOC (before consideration by a court) would be circumvented if this Court now assumed jurisdiction over Allen's Title VII claim.

That contention is directly contrary to law. EEOC's action or inaction cannot affect the grievant's substantive rights under Title VII. *See, e. g., Miller v. International Paper Co.,* 408 F.2d 283, 290 (5th Cir. 1969).

### 4. *Allen's Pending Request for Review of FEPC Decision*

As already stated, FEPC dismissed Allen's charge November 14, 1980. On December 17, 1980 Allen filed a "Request for Review" of that decision, as she was entitled to do under Illinois law. Section 5(f) states:

> Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsections (c) or (d) [state administrative proceedings such as the FEPC proceeding]. . . .

Schwab's vigorous objections to federal jurisdiction over Allen's Title VII claim while state proceedings are ongoing may be viewed as a "request" to stay federal proceedings. More than 60 days have elapsed since Allen's Request for Review, and this Court sees no constructive purpose to be served by such a stay. Schwab's "request" is denied.

### Conclusion

This excursion through some of the wildernesses of Title VII has resembled nothing so much as a voyage to Lilliput (including the dispute between the Big-Endians and the Little-Endians).[5] As already indicated, its conclusion is fortunately simpler to chart:

1. Allen's motion to amend the complaint is granted.

2. Schwab is ordered to answer the complaint as amended on or before March 6, 1981.

3. This case is set for a further status report.

---

5. Even apart from Schwab's frivolous argument under Section 5(e), very little of the charting of the wilderness reflected in this opinion may be ascribed to the submissions of the parties. Left to their devices, the Court would still be lost in the outer reaches of an extraordinarily complex (and opaque) statutory and regulatory scheme. Special thanks are due to the map-making efforts of student extern Carlos Saavedra and this Court's law clerk William Von Hoene.