No. 81–480.   KAMBEROS *v.* GTE AUTOMATIC ELECTRIC, INC.   C. A. 7th Cir.   Certiorari denied.

JUSTICE WHITE, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

In this Title VII case, the Court of Appeals for the Seventh Circuit substantially reduced an award of backpay because the petitioner did not seek a right-to-sue letter from the Equal Employment Opportunity Commission while the Commission was attempting to resolve the grievance through conciliation.   The decision conflicts directly with the position of the Fifth Circuit, indirectly with that of the Ninth Circuit, possibly misreads this Court's decisions, and definitely leaves Title VII plaintiffs confused as to their responsibilities under the Civil Rights Act of 1964.   I would grant certiorari to resolve the conflict and, it is hoped, to clarify the situation.

Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 86 Stat. 103, 42 U. S. C. § 2000e *et seq.*, establishes procedures by which aggrieved parties may seek relief from unlawful discrimination.   The Act provides that charges first be

brought to the Equal Employment Opportunity Commission within 180 days of the alleged violation. § 2000e–5(e). If the Commission dismisses the charge or issues a right-to-sue letter, the party may bring an action in federal court within 90 days. § 2000e–5(f)(1)(A). Regulations under the Act provide that after 180 days from the filing of a complaint with the Commission, a person can request a right-to-sue notice which "the Commission shall promptly issue." 29 CFR § 1601.28(a) (1980). Nothing in the Act or its accompanying regulations requires that such a request be made within a certain time, or, for that matter, that it be made at all.

The petitioner, a lawyer, was refused employment by respondent because, as she was told in just so many words, the company was looking for a man. That same day petitioner filed her complaint with the Commission. Although petitioner could have requested a right-to-sue letter 180 days later, she waited for over four years while the Commission pursued the grievance through conciliation. That process apparently was unsuccessful and, on January 3, 1974, a right-to-sue letter was issued. Fifteen days later, petitioner filed suit in Federal District Court, which upheld her claim and awarded various prospective relief as well as backpay of over $100,000 dating from the filing of charges in 1969. The Court of Appeals for the Seventh Circuit agreed that the respondent was liable for sex discrimination, but objected to the backpay award because the petitioner allowed her complaint to "lie dormant" with the Commission for over four years when she could have obtained a right-to-sue letter upon request. The District Court was directed, on remand, to reduce the backpay award for the time during which petitioner could have requested a right-to-sue letter from the Commission. 603 F. 2d 598, 603.

The Fifth Circuit has expressly declined to rule that Title VII plaintiffs must make a timely request for a right-to-sue letter or lose the right to substantial backpay relief. In two

recent cases, one involving a 9-year delay between the filing of charges and the issuance of a right-to-sue letter, *Bernard* v. *Gulf Oil Co.*, 596 F. 2d 1249 (1979), aff'd and modified on other grounds, 619 F. 2d 459 (1980) (en banc), aff'd, 452 U. S. 89 (1981), and the other involving a claim pending before the Commission for five years, *Fowler* v. *Blue Bell, Inc.*, 596 F. 2d 1276 (1979), the court reasoned that the plaintiff was entitled to await completion of conciliation efforts before filing suit. "A plaintiff cannot be penalized for choosing . . . the legislatively and judicially favored method of relying on the administrative processes of the EEOC." 596 F. 2d, at 1257. The Fifth Circuit refused to find cause to invoke laches* in the plaintiffs' failure to request a right-to-sue letter from the Commission.

In this case, the court did not refer to the Fifth Circuit cases, or any cases within its own Circuit, but looked instead to dictum in a Ninth Circuit decision that the "complainant should not be permitted to prejudice the employer by taking advantage of the Commission's slowness in processing claims or by procrastinating while being aware that the Commission intends to take no further action." *Lynn* v. *Western Gillette, Inc.*, 564 F. 2d 1282, 1287 (1977) (footnote omitted). Nothwithstanding this language, the decision in *Lynn* was that the statutory 90-day period within which an aggrieved party must file a Title VII action does not begin to run until receipt of a right-to-sue letter and notification that the Commission's conciliation efforts have failed.

---

*The respondent suggests a meaningful distinction exists between the Fifth Circuit's refusal to invoke laches and the Seventh Circuit's reduction of backpay. The distinction is not persuasive, as the Seventh Circuit seems to recognize. See *EEOC* v. *Massey-Ferguson, Inc.*, 622 F. 2d 271, 275 (1980). Both doctrines are governed by the same equitable considerations. It would be little comfort to a Title VII plaintiff to know that a court will not bar a claim but only substantially limit the amount of recovery. The use of either would leave aggrieved parties confused as to whether they can await the Commission's action or must press for permission to file suit. The cases cannot be reconciled on this basis.

This Court has said that a trial court may restrict or even deny backpay *when* "a Title VII defendant is . . . prejudiced by a private plaintiff's unexcused conduct of a particular case." *Occidental Life Insurance Co.* v. *EEOC*, 432 U. S. 355, 373 (1977); *Albermarle Paper Co.* v. *Moody*, 422 U. S. 405, 424–425 (1975). Here, it is at least arguable that petitioner's patience in awaiting completion of conciliation efforts is not to be considered "unexcused conduct" in light of the "federal policy requiring employment discrimination claims to be . . . , whenever possible, administratively resolved before suit is brought in a federal court." 432 U. S., at 368. In authorizing the Commission to initiate its own suits, Congress hoped that "recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the [Commission]." 118 Cong. Rec. 7168 (1972). "It is assumed that individual complainants . . . would not cut short the administrative process merely to encounter the same kind of delays in a court proceeding." H. R. Rep. No. 92–238, p. 13 (1971).

The conflict between the Circuits is plain. It is also apparent that if a Title VII plaintiff should pay a price for awaiting the outcome of conciliation efforts, that result should be made unmistakably clear. I would grant certiorari.