[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13914
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-00999-AT

COLETTE MAUREEN HILLIARY,

Plaintiff-Appellant,

versus

FLIGHTSAFETY INTERNATIONAL, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 27, 2019)

Before MARCUS, BRANCH, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Colette Hilliary, proceeding pro se,[1] appeals the district court's grant of summary judgment in favor of her former employer, FlightSafety International, Inc. ("FSI"). Plaintiff filed a civil action against FSI, asserting claims for race discrimination and for retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1981.[2] No reversible error has been shown; we affirm.

Plaintiff (a black female) was employed by FSI for over nineteen years. At all times pertinent to this appeal, Plaintiff worked as a Program Manager for the Cabin Safety Department in Atlanta ("Department"). In this role, Plaintiff managed two full-time employees (both of whom were white) and three part-time employees (two of whom were black and one of whom was white).

In March 2015, one of Plaintiff's full-time employees -- Winifred Darsey (a white female) -- complained to FSI that Plaintiff gave preferential treatment to

---

[1] We construe liberally pro se pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

[2] In her complaint, Plaintiff also alleged against FSI claims for gender discrimination and for hostile work environment. Because Plaintiff raises no challenge to the district court's grant of summary judgment in favor of FSI on these claims, Plaintiff's gender-discrimination and hostile-work-environment claims are not before us on appeal.

2

Plaintiff's two black employees.  In April 2015, Darsey complained again about racial discrimination by Plaintiff.

FSI's human resources department investigated Darsey's April 2015 complaint.  FSI concluded that Darsey's complaints of racial discrimination were unfounded; but the investigation raised other concerns about Plaintiff's management style.  As a result, Plaintiff says she was placed on a "Performance Improvement Plan," pursuant to which Plaintiff was instructed to work with Plaintiff's supervisors to improve her management and communication skills.

In June 2015, Darsey complained to FSI about alleged timekeeping errors involving Plaintiff's two part-time black employees.  At the time, FSI had no official policy in place about lunch breaks for part-time employees.  As a result of Darsey's complaint, however, FSI implemented a new policy disallowing part-time employees from being paid for lunch breaks.  FSI then required all three of Plaintiff's part-time employees to submit their timesheets directly to FSI's human resources department -- instead of to Plaintiff; this practice caused Plaintiff embarrassment.

In September 2015, Plaintiff made a formal complaint to FSI's Senior Vice President and General Counsel, in which Plaintiff claimed for the first time that FSI had discriminated against her based on her race.  Following an investigation,

3

FSI determined that Plaintiff's allegations of race discrimination were unsubstantiated.

In December 2015, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race, harassment, and retaliation. FSI received notice of Plaintiff's EEOC charge on 6 January 2016.

Meanwhile, in November 2015, FSI decided to move a simulator from Orlando to Atlanta. Sometime in late 2015, FSI also made a business decision to close Plaintiff's Department. As a result of closing the Department, FSI laid off all six of the Department's employees (including Plaintiff). FSI says it decided to close the Department because it needed physical space for the Orlando simulator and because of the Department's declining revenue.

In February 2017, Plaintiff applied for an instructor position at FSI's Savannah office. The Savannah position involved teaching others to work on corporate aircraft. Plaintiff -- who had no experience working on corporate aircraft -- was not selected for the position. In June 2017, FSI hired a candidate for the Savannah position who had substantial corporate aircraft experience. In July 2017, Plaintiff filed a second EEOC charge, alleging that FSI failed to rehire her for the Savannah position in retaliation for Plaintiff's complaints about discrimination.

4

After Plaintiff filed suit, the magistrate judge -- in a 50-page report and recommendation ("R&R") -- recommended granting FSI's motion for summary judgment. About Plaintiff's claims for race discrimination and for retaliation, the magistrate judge concluded that Plaintiff had failed to establish a prima facie case and that Plaintiff had failed to demonstrate that FSI's proffered reasons were pretextual.

The district court adopted the R&R's statement of facts and addressed in detail Plaintiff's objections to the R&R. The district court then granted summary judgment in favor of FSI on Plaintiff's claims for race discrimination and retaliation. In doing so, the district court assumed arguendo that Plaintiff had established a prima facie case but concluded that Plaintiff had failed to satisfy her burden of showing pretext.

I.

On appeal, Plaintiff first contends that the district court erred in addressing the merits of Plaintiff's retaliatory failure-to-rehire claim: a claim based on Plaintiff's not being hired for the Savannah position. Plaintiff says her failure-to-rehire claim is outside the scope of this civil action because that charge was still

5

pending before the EEOC and because the EEOC had not yet issued a right-to-sue letter on that claim.

Generally speaking, a plaintiff must file a complaint with the EEOC and receive a right-to-sue letter from the EEOC before filing a Title VII action in federal district court.  Pinkard v. Pullman-Standard, 678 F.2d 1211, 1215 (5th Cir. Unit B 1982).  Receipt of an EEOC right-to-sue letter, however, is not a jurisdictional prerequisite that -- if not satisfied -- strips the district court of subject matter jurisdiction.  Id. at 1216.  Instead, the receipt of a right-to-sue letter is a condition precedent subject to equitable modification, including waiver, estoppel, and equitable tolling.  Id.

That the EEOC issued no right-to-sue letter in response to Plaintiff's July 2017 charge is no automatic bar to the district court's subject-matter jurisdiction. See id.  Nor is Plaintiff's right to sue on her failure-to-rehire claim conditioned on the EEOC first conducting a full investigation of Plaintiff's charge.  See Sims v. MacMillan, 22 F.3d 1059, 1063 (11th Cir. 1994).

In her civil complaint, construed liberally, Plaintiff asserted that FSI refused to consider Plaintiff's application for the Savannah position in retaliation for Plaintiff's complaints of discrimination.  Contrary to Plaintiff's assertion on appeal, both parties had an opportunity to -- and did -- conduct discovery on

6

Plaintiff's failure-to-rehire claim.  Both parties also fully briefed this claim in the district court.  Under the circumstances of this case, we cannot say that the district court erred in addressing the merits of Plaintiff's failure-to-rehire claim in the absence of a right-to-sue letter from the EEOC.

## II.

We review <u>de novo</u> the district court's grant of summary judgment.  <u>Ave. CLO Fund, Ltd. v. Bank of Am., N.A.</u>, 723 F.3d 1287, 1293 (11th Cir. 2013).  We view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  <u>Id</u>. at 1294.

### A. <u>Race Discrimination</u>

Title VII makes it unlawful for an employer to discriminate on the basis of an employee's race.  42 U.S.C. § 2000e-2(a)(1).  The elements of a section 1981 race discrimination claim in the employment context are the same as the elements of a Title VII disparate treatment claim.  <u>Rice-Lamar v. City of Ft. Lauderdale</u>, 232 F.3d 836, 843 n.11 (11th Cir. 2000).  Plaintiff bears the ultimate burden of proving

-- by a preponderance of the evidence -- that FSI discriminated unlawfully against her.  See Crawford v. Carroll, 529 F.3d 961, 975 (11th Cir. 2008).

Because this case involves only circumstantial evidence of discrimination, we apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).  Under this framework, the plaintiff must first establish a prima facie case of discrimination, which creates a presumption of unlawful discrimination against the employee.  Id.  The employer may then rebut that presumption with legitimate, nondiscriminatory reasons for the adverse employment acts.  Id.  The burden then shifts to the employee to produce evidence sufficient to create a genuine issue of material fact that the employer's articulated reasons are a pretext for unlawful discrimination.  Id.

In this appeal, we focus on the third step of the McDonnell Douglas analysis: whether Plaintiff satisfied her burden of showing that FSI's legitimate, nondiscriminatory reasons were pretextual.  To show pretext, a plaintiff must present evidence sufficient "to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).  The plaintiff does so by showing "weaknesses, implausiblities,

8

inconsistencies, incoherencies, or contradictions in the employer's rationale." Holland v. Gee, 677 F.3d 1047, 1055-56 (11th Cir. 2012).

"Provided that the [employer's] proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (stressing that "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions."). We have said that "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Alvarez, 610 F.3d at 1266 (citation and alteration omitted). The pretext inquiry centers only on the employer's beliefs, "not on reality as it exists outside of the decision maker's head." Id.

FSI presented two legitimate, nondiscriminatory reasons for closing the Department: (1) the Department's declining revenue and (2) the need for additional space in Atlanta for the Orlando simulator. Because both reasons would motivate a reasonable employer, Plaintiff must meet these reasons head on and rebut them. See Chapman, 229 F.3d at 1030.

9

Plaintiff first disputes FSI's determination that the Department experienced declining revenues.[3]  But Plaintiff's own evidence showed that between 2010 and 2015, the Department's revenue dropped from over $1,360,000 to about $750,000. That revenue improved some between 2013 and 2015 is insufficient to contradict FSI's conclusion about an overall downward trend in the Department's revenue.

Plaintiff also disputes that the transfer of the Orlando simulator necessitated closing the Department.  Plaintiff says that FSI continued to conduct cabin safety training in Atlanta after the Orlando simulator was installed.  Nothing evidences, however, that FSI maintained a cabin safety training department in Atlanta: Plaintiff's evidence shows only that FSI would on occasion arrange for an instructor to travel to Atlanta to provide training.  Plaintiff also asserts that the FSI could have made room for the Orlando simulator -- without closing the Department -- if FSI had removed one of the existing cabin training devices.

Plaintiff disagrees with the wisdom of FSI's business decisions; but that disagreement is not enough to show pretext.  See Chapman, 229 F.3d at 1030.  FSI was free to close the Department and to terminate Plaintiff's employment for any

---

[3] On appeal, Plaintiff contends that the district court erred in denying her an opportunity to file a motion to compel FSI to produce more detailed financial records.  The record evidences that the magistrate judge conducted a telephone conference about a discovery dispute.  Plaintiff says that, during the conference, the magistrate judge disagreed with Plaintiff's argument that additional financial records were necessary to prove pretext.  Nothing evidences, however, that Plaintiff was prevented from filing a motion to compel.

10

reason so long as the reason was not a discriminatory one. Plaintiff has failed to show that FSI's proffered reasons are so implausible, inconsistent, or incoherent that a reasonable factfinder could infer that the reasons were untrue or a pretext for discrimination. Nor has Plaintiff presented evidence tending to show that FSI's business decision was motivated by discriminatory animus.[4]

Because Plaintiff has failed to satisfy her burden of establishing pretext, we affirm the district court's grant of summary judgment in favor of FSI on Plaintiff's claims for race discrimination.

### B. Retaliation

Employers are barred from retaliating against an employee because she opposed a practice made unlawful by Title VII or for making a charge of discrimination. See 42 U.S.C. § 2000e-3(a). We apply the McDonnell Douglas burden-shifting framework to retaliation claims based on circumstantial evidence. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).

To establish a prima facie case for retaliation under Title VII or section 1981, a plaintiff must show that she engaged in statutorily protected activity and

---

[4] To the contrary, we note that Plaintiff testified that she believed FSI closed the Department to avoid litigation from Darsey: not to discriminate against Plaintiff based on Plaintiff's race.

11

that she suffered a materially adverse employment act that was causally related to the protected activity.[5]  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012).  To establish a materially adverse employment act, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Id. at 67.  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Id. at 68.

Once a plaintiff establishes a prima face case of retaliation, the employer must articulate a legitimate, non-retaliatory reason for the challenged employment act.  Brown, 597 F.3d at 1181.  Then, in the light of that stated reason, the burden shifts to the plaintiff to offer evidence that the employer's stated reason is pretextual.  Id. at 1181-82.

In considering Plaintiff's retaliation claim, the district court identified three "materially adverse employment acts": (1) FSI's alleged failure to promote

---

[5] On appeal, Plaintiff argues that the district court erred in concluding that complaints Plaintiff made to FSI's human resources department and to Plaintiff's supervisors about Darsey in April, May, and July 2015 constituted no "protected activity."  Because resolution of this issue would not impact on our decision about Plaintiff's claims, we need not address this argument on appeal.

12

Plaintiff; (2) the closure of the Department and the termination of Plaintiff's employment; and (3) FSI's failure to rehire Plaintiff for the Savannah position. On appeal, Plaintiff contends that the district court also should have considered as "materially adverse" three other employment acts: Plaintiff's placement on a Performance Improvement Plan, FSI's implementation of the new timesheet policy, and FSI's proposed severance agreement. We disagree.

Plaintiff has failed to demonstrate that these last three complained-of employment acts resulted in more than trivial injury or harm. Nothing evidences that these employment acts resulted in formal or lasting discipline, a bad performance review, a loss of benefits or pay, or anything more than a minor change in Plaintiff's responsibilities. Plaintiff testified only that the Performance Improvement Plan placed her under additional scrutiny and that the new timesheet policy was "embarrassing" and "created a sense of distrust." On this record, Plaintiff cannot show that these complained-of acts were "materially adverse" for purposes of establishing a claim for retaliation under Title VII or section 1981.

About Plaintiff's failure-to-promote claim, Plaintiff contends that the district court failed to view the record in her favor and, instead, accepted FSI's proffered reason for the alleged rescission of Plaintiff's promotion. Plaintiff's argument is unsupported by the record.

13

In considering Plaintiff's failure-to-promote claim, the district court applied properly the McDonnell-Douglas framework.  The district court focused on whether Plaintiff had satisfied her burden of showing that FSI's proffered reason -- that no position existed into which Plaintiff could have been promoted -- was pretextual.

Consistent with Plaintiff's testimony, the district court acknowledged that Plaintiff had talked with her supervisor about the possibility of a promotion, but also that the position would only become available after someone left the company.  The district court also considered Plaintiff's contention that FSI allowed for the creation of internal positions and for internal promotions without a formal posting of a position.  The district court determined, however, that this evidence failed to rebut head-on FSI's stated reason that no position was available.  On this record, we cannot conclude that the district court erred in construing the evidence or in applying the applicable law to the facts of this case.

As we have already discussed, the record likewise supports the district court's determination that Plaintiff failed to satisfy her burden of showing that FSI's stated reasons for the other material adverse employment acts were pretextual.  We affirm the grant of summary judgment in favor of FSI on Plaintiff's claims for retaliation.

14

AFFIRMED.